LA SOCIETE DE CREDIT MOBILIER (CASEY v.). See Case No. 2,496.

LASSALLE (SIMPSON v.). See Case No. 12,882.

---

## Case No. 8,100.

### LASTRAPES et al. v. BLANC et al.

[3 Woods, 134.] [1]

Circuit Court, D. Louisiana. April Term, 1878.

BANKRUPTCY—PARTNERSHIP—INDIVIDUAL ASSIGNMENTS — EVIDENCE — PURPOSE OF ADMISSION—REQUISITE NUMBER OF CREDITORS — HUSBAND PARTY TO PROCEEDINGS.

1. The individual members of a commercial partnership held, as joint owners, a plantation, which, as such partners, they cultivated in sugarcane and other crops, and not being indebted individually, they, for the purpose of defrauding the creditors of the firm, executed a mortgage on the plantation to a third person without consideration. Held, that this was an act for which the firm might be put in bankruptcy.

2. Evidence which is incompetent for one purpose, but competent for another, is admissible, subject to proper instructions from the court.

3. The deposition of a defendant taken in another cause, is admissible either to contradict his oral evidence given on the trial, or as an admission by him.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

4. The bankrupt law does not require the court, in its adjudication of bankruptcy, formally to pass upon the question whether the requisite proportion of creditors, in number and amount of their claims, have joined in the petition. If the defendants desire to contest this point, they should do it in the manner prescribed by the act.

5. Where a married woman was authorized by her husband to carry on business as a partner with other members of a firm, and was separate in property from her husband, *held*, that it was not necessary to make her husband a party in a proceeding in involuntary bankruptcy against the firm.

[In error to the district court of the United States for the district of Louisiana.]

The original petition in this case was filed on May 6, 1874, by [Jules A.] Blanc & Legendre, liquidators of the commercial firm of that name, against the firm of A. Lastrapes & Co., composed of Charles Lastrapes, Alfred E. B. Lastrapes, and Mary L. H. Lastrapes, wife of Dr. A. Landry, of the parish of St. Martin. The petition alleged that the petitioners were creditors of A. Lastrapes & Co., and that their demands were provable under the bankrupt act; that A. Lastrapes & Co. owed debts exceeding $250, and that the claim of the petitioners exceeded that amount, and consisted of a promissory note signed by A. Lastrapes & Co., payable to the order of P. S. Wiltz & Co., for $2,500, dated April 1, 1873, and payable January 1, 1874, with interest, and indorsed by P. S. Wiltz & Co. and G. D. Feriet; that A. Lastrapes & Co., within six months, did commit an act of bankruptcy, in fraudulently stopping payment upon another note made by them for $2,000, owned by Mrs. Mary May, dated December 3, 1873, payable 30 days after date, with interest, payable to and indorsed by said P. S. Wiltz & Co., and had not resumed payment within fourteen days, to wit, by January 20, 1874, and also upon a certain draft drawn by A. Lastrapes & Co., on P. S. Wiltz & Co., dated February 21, 1873, and payable February 4, 1874, for $2,500, payable to and indorsed by A. C. Landry; that petitioners owned said draft and notes then due, owing and unpaid. The petition also alleged that said firm of A. Lastrapes & Co. were engaged in planting cane and cotton, and manufacturing sugar, and that the said draft and notes were issued by said firm, and negotiated to raise money to carry on the business of said firm, and that within six calendar months previous they committed an act of bankruptcy, in that they fraudulently stopped payment of their commercial negotiable paper aforesaid, and had not resumed payment within a period of fourteen days, to wit, 15th January, 1874. The petition further alleged that A. Lastrapes & Co. had within the above period of six calendar months, being bankrupt and insolvent, and in contemplation of bankruptcy and insolvency, to wit, on December 26, 1873, committed an act of bankruptcy, in that, that said A. Lastrapes & Co., by notarial act, executed a mortgage for $70,000

to Adeline Dreaux, of New Orleans, on certain lands in the parish of St. Martin, and executed and delivered twenty-eight promissory notes of $2,500 each, drawn by them jointly and in solido, payable in one and two years, and that each of the partners of the firm, together with Dr. Alexander Landry, signed said act of mortgage; that said mortgage was made to prevent the said property from being taken on legal process, and with intent to delay and hinder their creditors; that said Dreaux did not lend said sum of $70,000, or any portion thereof, and that said mortgage was executed to defeat the bankrupt act, and with intent to cover up the property and screen it from the creditors; that it was fraudulent and simulated. The petition further alleged that said Mary Lastrapes became a member of said firm with the authorization of her husband, and that she was now separate in property from him. On these allegations the petitioners prayed that the firm of A. Lastrapes & Co., in their firm capacity and individually, might be declared bankrupt, etc. Afterwards, the act of 1874 (18 Stat. 178), amendatory of the bankrupt law, having in the mean time been passed, the original petition was amended by inserting an averment that other creditors of the defendants, making one-fourth in number and holding one-third of all the debts due by the defendants, had joined in the petition. The answers of the defendants took issue on the material averments of the petition, and defendants having demanded a trial by jury, a jury was called and the issues of fact submitted to it. The jury rendered a verdict for the petitioners. In the course of the trial several bills of exception were taken, and the case was brought to the circuit court by writ of error, and upon the errors assigned upon the record, the cause was heard.

Albert Voorhies, C. B. Singleton, and R. H. Browne, for plaintiffs in error.

J. B. Cotton and L. L. Levy, for defendants in error.

BRADLEY, Circuit Justice. Taking all the proceedings in this case together, the original and supplementary petitions, the various exceptions and answers, and the rulings of the court thereon, prior to the trial before the jury, I think it must be conceded that the case stood for trial upon the original petition, so far modified and amended as to adapt it to the requirements of the act of 1874 (18 Stat. 178), by the addition of other creditors as petitioners with the original petitioners, so as to make up (as alleged) one-fourth in number, and one-third in amount, of the creditors of A. Lastrapes & Co., the alleged bankrupts, and by an allegation that the latter has suspended payment for forty days on the commercial paper referred to in said original petition, and also so amended as to allege that the said A. Lastrapes & Co. is-

sued the said paper as merchants. In other respects the original petition remained unchanged, and the case was tried upon the allegations contained therein, and the traverse of those allegations by the defendants. Amongst the allegations of the petition was one, that the said firm of A. Lastrapes & Co., on the 26th of December, 1873, by a notarial act, executed a mortgage for $70,000 to one Adeline Dreaux, of New Orleans, on certain lands in the parish of St. Martin, and twenty-eight promissory notes for $2,500 each, payable in one and two years, drawn by them jointly, and in solido, said mortgage being signed by all the partners individually, and by Dr. Landry, the husband of Mrs. Landry, one of the partners, and it was alleged that this mortgage was a fraudulent and simulated transaction, and that no consideration was given by said Adeline Dreaux therefor.

The questions raised on the present writ of error are solely questions of law, and appear by the bills of exception which were taken at the trial, and the assignments of error. The first, and most important of all, is this, to wit, whether, viewing the firm of A. Lastrapes & Co. as a commercial partnership, or as merchants (which the petitioners elected to do), they could, as such merchants, hold land, and could, as a commercial firm, execute any mortgage thereon. It appears by the answers of the defendants and by the proof, that the land which was mortgaged was a plantation inherited by the defendants from their deceased father and mother; that it belonged to them in indivision, and that they cultivated it as a sugar plantation, raising also rice and corn and other agricultural products thereon; that they ground the cane and manufactured sugar therefrom, and sold the products of the plantation. As to the allegations of the petition the defendants take issue, averring as follows: (1) That they are not bankers, brokers, traders, manufacturers or miners. (2) That they inherited their plantation and own the same in indivision. (3) That they constitute an ordinary planting partnership, to cultivate their plantation. (4) That this ordinary partnership has always been solvent. (5) That the alleged mortgage of the 26th of December, 1873, is not injurious to any creditor of said partnership; that it was made in the usual course of business, and that, besides, it was inchoate, the promissory notes secured by it not having been negotiated or discounted; and finally, that said mortgage had been canceled before this suit was brought, and within plaintiff's knowledge. (6) That the promissory notes held by plaintiffs did not constitute debts due by said planting partnership; that they were executed by none of the three members thereof, but by Dr. A. Landry, for the accommodation of A. C. Landry, without any power of attorney for that or any other purpose, and that said promissory notes were of no benefit to said partnership, and their proceeds were not used for partnership purposes. (7) That the draft held by plaintiffs was executed for the accommodation and sole benefit of A. C. Landry, and was executed in the name of this ordinary partnership by one of the members, without the authorization, express or implied, of his copartners.

Now, assuming that the position taken by the petitioners was maintainable, namely, that the commercial paper held by them was made by the defendants as a commercial partnership—a position which the jury, by their verdict, sustained—can it be said that the defendants did execute or could have executed the said mortgage as such commercial partnership, so as to make it an act of bankruptcy of said partnership?

Suppose any firm of copartners, consisting of A, B and C, hold land together as joint owners, forming no part of their partnership capital, but nevertheless liable to be taken and applied on judgment and execution against them, in satisfaction of the partnership debts; subject, perhaps, to a prior claim on the part of their respective individual creditors; suppose that this firm, A, B and C, should all join together in selling or mortgaging this land to a third person without consideration, and for the purpose of defrauding their creditors, would not this be a sufficient act of bankruptcy on the part of these persons, thus in partnership, to make the firm liable to be put into bankruptcy? Suppose that this should be done by them for the purpose of defrauding the creditors of the firm, they not being indebted in any other manner than as a firm, could not the creditors of the firm, their only creditors, throw them into bankruptcy for such an act?

Suppose that their partnership capital is, in itself, insignificant, and the resources on which they rely to pay their partnership debts are principally, and perhaps almost entirely, derived from the products of the land which they thus fraudulently convey—are the creditors of the firm, their debts remaining unpaid, to stand by in a helpless condition and see this property whisked away from their reach, and they to have no remedy?

Metaphysically, it is true, the land is not the property of the firm, and the act of conveying it is not the act of the firm; but is it not carrying the metaphysics of the law too far to say that it is not practically, and in effect, a fraudulent act of the firm, intended to cheat and defraud their creditors? Is not that the sensible view of it? Is it not the equitable view, and the one that all business men would take? It seems to me that it must be so; and that it is for the jury to say, upon the evidence adduced before them, whether it is not really the act of the firm, although in form only the act of the individual members of the firm.

The verdict in this case was: "We, the jury in this case, find a verdict for the plain-

tiffs; the mortgage considered executed for the purpose of incumbering and delaying indebtedness by the defendants in this case." This verdict is informal; but in finding generally for the plaintiffs, it is to be understood as finding all the issues in their favor—namely, that the defendants issued the notes as merchants, that they had neglected for more than forty days to pay them, and that the mortgage was a fraudulent act. It seems to me that the verdict cannot be disturbed on the ground that the execution of the mortgage was not a partnership act.

Another point raised by the bills of exception is, that evidence of various acts of the defendants covering a considerable period of time, some of which had been averred as acts of bankruptcy in the supplementary petitions, and had been excluded from the case as such by the court, were allowed to be proven before the jury for the purpose of showing the general design of the defendants to defraud their creditors, and thus giving character to the acts complained of in the original petition. I think the evidence was competent for this purpose, and, if competent for any purpose, it was admissible, subject to proper instructions from the court. It does not appear that the court refused to give any proper instructions which the character of this evidence required; but it does appear that the court, in allowing the evidence to be given, observed upon the limited view in which it was admissible. Had the defendants desired more specific instructions on the subject, they should have asked for them before the case was given to the jury. The deposition of Alfred Lastrapes, which was given in evidence, was admissible on two grounds: First, for the purpose of contradicting any thing in his oral testimony; and secondly, as an admission on his part.

Another objection made to the judgment is, the want of any direct adjudication that the requisite proportion of creditors, in number and amount, joined in the petition in bankruptcy. This was alleged in the petition and was not denied in the answers—or, if any general denial of the answers may be considered as putting this point in issue, the verdict of the jury must be considered as settling it in the plaintiff's favor. The law makes no express requirement that this matter should be formally passed upon in the judgment of the court. No direct issue was made on this point by the pleadings. Had the defendants desired to contest it, they should have done so in the manner pointed out by the act (18 Stat. 181).

The only other error to which my attention has been directed is in proceeding against Mrs. Landry without joining her husband. The petition alleges that she became a member of the firm with the authorization of her husband, and that she was separate in property from him. This allegation is not denied in the answers of defendants, or either of them; and Mrs. Landry does not set up the objection. If she was authorized to carry on business as a partner in connection with the other members of the firm, and was separate in property from her husband, I do not think that it was necessary that her husband should be joined in their bankruptcy proceedings.

I think there is no error in the record, and that the judgment of this district court must be affirmed.